EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | 2007 TSPR 217 |
| Libertario Pérez Rodríguez | 172 DPR \_\_\_\_ |

Número del Caso: CP-2004-3

Fecha: 7 de diciembre de 2007

Abogado de la Parte Querellada:

Lcdo. Guillermo Figueroa Prieto

Oficina del Procurador General:

Lcda. Noemí Rivera De León
Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


INTEGRACION DE SALA ESPECIAL



ORDEN


San Juan, Puerto Rico a 7 de diciembre de 2007


Debido a la no intervención de los Jueces Asociados señor Rivera Pérez y señora Rodríguez Rodríguez, se constituye una Sala Especial integrada por el Juez Presidente señor Hernández Denton, y los Jueces Asociados señor Rebollo López y señora Fiol Matta, para entender en el caso CP-2004-3; *In re Libertario Pérez Rodríguez*.

Lo decretó y firma,



Federico Hernández Denton
Juez Presidente



CERTIFICO:



Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Libertario Pérez Rodríguez

                         CP-2004-3

SALA ESPECIAL INTEGRADA POR EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON Y LOS JUECES ASOCIADOS SEÑOR REBOLLO LÓPEZ Y SEÑORA FIOL MATTA

PER CURIAM

San Juan, Puerto Rico, a 7 de diciembre de 2007

El Lcdo. Libertario Pérez Rodríguez suscribió un contrato de servicios profesionales, como asesor legal del Municipio de Caguas, con vigencia del 1 de julio de 1998 al 30 de junio de 1999. El 1 de diciembre de 1998, Pérez Rodríguez acordó un contrato de servicios profesionales para servir como asesor legal de X-Plosión Entertainment Center Management & Development Corporation. El contrato entraba en vigor el 1 de enero de 1999.

El 15 de diciembre de 1998, Pérez Rodríguez autorizó una escritura sobre "Lease and Administration Agreement" otorgada por el

Municipio de Caguas y X-Plosión. Mediante dicho contrato, el Municipio le arrendó una parcela de terreno conocida como "Parque Acuático" a X-Plosión.[1]

El 31 de diciembre de 1998, Pérez Rodríguez canceló el contrato de servicios profesionales que tenía con el Municipio; es decir, canceló el contrato antes de su fecha de vencimiento de 1 de junio de 1999. Al día siguiente, el 1 de enero de 1999, Pérez Rodríguez comenzó a fungir como asesor legal de X-Plosión.

Por los hechos anteriormente expuestos, le ordenamos al Procurador General que presentara querella contra Pérez Rodríguez. El Procurador General formuló los siguientes cargos contra Pérez Rodríguez: 1. violación al Canon 21 de Ética Profesional, 4 L.P.R.A. Ap. IX, que exige completa lealtad del abogado para con su cliente; 2. posible violación al deber de imparcialidad requerido de los notarios al autorizar negocios jurídicos según la Exposición de Motivos de la Ley Notarial de 2 de julio de 1987, según enmendada, 4 L.P.R.A. sec. 2001 et seq., y la Regla 4 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV; y 3. violación al Canon 38 del Código de Ética, ante, por alegada apariencia de conducta impropia.

Presentada la querella en su contra, Pérez Rodríguez solicitó la desestimación de los cargos radicados. En

---

[1] Surge del referido contrato que X-Plosión operaría el "Parque Acuático" por un término de veinte años a cambio de un canon de arrendamiento de tres mil dólares mensuales a favor del Municipio y el 15% del ingreso bruto mensual producto de la operación del parque.

síntesis, alegó que el Canon 21 no era aplicable a los hechos porque a un notario, quien no representa a las partes en el otorgamiento de un negocio jurídico, no se le puede encontrar incurso en violación a dicho Canon ya que éste se refiere exclusivamente a la naturaleza de la relación abogado-cliente. En cuanto al segundo cargo en su contra, adujo que un notario no viola el deber de imparcialidad por el mero hecho de que uno, o ambos, de los otorgantes en un negocio jurídico sea su cliente. Finalmente, alegó que el tercer cargo no especificaba los hechos que el Procurador estimaba violaban el Canon 38 y además, que como no había incurrido en ninguna otra violación, no se le podía imputar infracción a este Canon solamente.

El 21 de junio de 2005 designamos al Lcdo. José Alberto Morales, para que en calidad de Comisionado Especial recibiera la prueba que tuvieran a bien presentar las partes y rindiera un informe con sus determinaciones de hechos y recomendaciones.

Posteriormente, el Procurador General y Pérez Rodríguez, acordaron someter el caso por el expediente. El 9 de noviembre de 2005, el Comisionado Especial emitió su informe en el cual sostuvo que Pérez Rodríguez había violado los Cánones 21 y 38 del Código de Ética, ante, y recomendó éste fuera amonestado. Resolvemos.

I

El Canon 21 del Código de Ética le exige al abogado lealtad completa para con su cliente. A estos efectos, el abogado tiene la obligación de divulgar a sus clientes las circunstancias relativas a las partes y a terceras personas, así como también, cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Dicho Canon establece que "[n]ingún abogado debe aceptar una representación legal cuando su juicio profesional pueda verse afectado por sus intereses personales." 4 L.P.R.A. Ap. IX, C. 21.[2]

---

[2] **Canon 21 – Intereses Encontrados**

El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a una u otro cliente, aún cuando ambos clientes así lo aprueben. Será altamente impropio de

(Continúa . . .)

El propósito de dicha norma es que el abogado mantenga intacta la confianza y deber fiduciario que tiene para con su cliente. Por esta razón, "[e]l abogado tiene la obligación de representar a su cliente con total lealtad, ejercer un criterio profesional independiente y desligado de sus propios intereses, no divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes." In re Bauzá Torres, res. el 31 de julio de 2007, 2007 TSPR 148. Véase también, In re Vélez Barlucea, 152 D.P.R. 298 (2000); Liquilux Gas Corp v. Berríos, Zaragoza, 138 D.P.R. 850 (1995).

Particularmente, el abogado debe evitar tres situaciones que pueden presentar un conflicto de intereses bajo el Canon 21: (1) que en beneficio de un cliente abogue por aquello a lo que el letrado debe oponerse en cumplimiento de sus obligaciones para con otro cliente; (2)

---

un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.

Cuando un abogado representa a un cliente por encomienda de otra persona o grupo, quien le paga al abogado por dicho servicio, debe renunciar la representación de ambos tan pronto surja una situación de conflicto de intereses entre la persona o grupo que le paga sus honorarios y la persona a quien representa.

aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior, y (3) aceptar una representación legal, o que continúe en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales. In re Sepúlveda Girón, 155 D.P.R. 345 (2001); In re Avilés Cordero, Tosado Arocho, 157 D.P.R. 867 (2002).

Ahora bien, en cuanto al Canon 21 y el ejercicio de la notaría hemos expresado que en el ejercicio de dicha función no puede haber planteamiento alguno de violación al referido Canon, puesto que está ausente ab-initio, la representación dual de abogado-cliente. En In re Avilés Cordero, Tosado Arocho, ante, citando a Sarah Torres Peralta, resolvimos que "siendo imposible la coincidencia en el mismo abogado de clientes en la gestión notarial, no hay cabida entonces para supuestos conflictos de intereses de los prohibidos en el Canon 21."

Por otro lado, la Regla 4 del Reglamento Notarial, ante, proscribe el deber de autonomía e independencia del notario que a su vez recoge la exposición de motivos de la Ley Notarial, ante. A estos efectos, dicha Regla dispone que "[e]n el ejercicio de su ministerio, el Notario representa la fe pública y la ley para todas las partes. Su obligación de ilustrar, de orientar y de advertir ha de desplegarla con imparcialidad."

En el cumplimiento de este deber, hemos reiterado que los notarios están obligados a ser funcionarios imparciales

que reciben, exponen, y legitiman la voluntad de los comparecientes del negocio jurídico. In re Cancio Sifre, 106 D.P.R. 386 (1977). No sólo hemos precisado que el notario tiene que ser imparcial, sino que también debe aparentarlo. Véase: In re Sepúlveda Girón, ante; In re Colón Muñoz, 131 D.P.R. 121 (1992); In re Cancio Sifre, ante.

Por último, el Canon 38 del Código de Ética, ante, exige la preservación del honor y dignidad de la profesión. Dicho Canon, en lo pertinente, dispone:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.

En cuanto a ello, hemos reiterado que el abogado debe asesorar a su cliente en estricto cumplimiento de la ley. Además, hemos sostenido que infringir el Canon 38 resulta nocivo al respeto que la ciudadanía deposita en las instituciones de justicia y la confianza que los clientes depositan en sus abogados. In re Sepúlveda Girón, ante.

En cuanto al referido Canon 38, en In re Sepúlveda Girón, ante, y en In re Avilés Cordero, Tosado Arocho, ante, expresamos que "la apariencia de conducta impropia tiene que sostenerse sobre la impresión que se le da al público de la violación efectiva de alguno de los cánones del Código de Ética Profesional o de la Ley Notarial de Puerto Rico." Ello no obstante, en In re Gordon Menéndez, res. 1 de junio de 2007, 2007 TSPR 108, resolvimos que el

Canon 38 opera ex propio vigore, modificando y revocando cualquier expresión nuestra anterior en contrario. En ese mismo caso aclaramos que "cuando un abogado actúa en violación del Canon 38, amerita nuestra intervención disciplinaria." In re Gordon Menéndez, ante.

II

En el caso ante nuestra consideración el Procurador General radicó ante este Tribunal tres cargos contra el Lcdo. Pérez Rodríguez en alegada violación a los Cánones 21 y 38 del Código de Ética, ante, y a la Regla 4 del Reglamento Notarial, ante. Como reseñáramos anteriormente, dichos cargos le fueron imputados por haber autorizado un contrato de arrendamiento entre el Municipio de Caguas y X-Plosión. Según el informe del Comisionado Especial "se vio mal" que para la fecha en la cual se suscribió el contrato de arrendamiento entre El Municipio y X-Plosión, Pérez Rodríguez fungiera como asesor legal del Municipio y que quince días después renunciara para trabajar como asesor legal de X-Plosión mediante contrato de servicio profesionales suscrito, pero no efectivo, previo a autorizarse el referido contrato de arrendamiento entre las partes.

La prueba, a nuestro juicio, no es suficiente para sostener los cargos sobre Canon 21 y Regla 4 radicados contra Pérez Rodríguez. Según sostuvimos en In re Caratini Alvarado, 153 D.P.R. 575 (2001), el criterio necesario

para sancionar a los miembros de la profesión togada es el de la prueba clara, robusta y convincente. Ello es así pues los procedimientos disciplinarios pueden conllevar la pérdida del título profesional.

El Procurador General entiende que Pérez Rodríguez tenía un interés personal en X-Plosión meramente por virtud del contrato de servicios profesionales que suscribió con la corporación. No estamos de acuerdo. El hecho de que Pérez Rodríguez suscribiera un contrato de servicios profesionales con X-Plosión no equivale a un interés personal en el negocio jurídico particular entre el Municipio y X-Plosión, que es lo que realmente le está prohibido al notario. Dicho de otra manera, <u>lo que se prohíbe es que el notario tenga un interés personal en el negocio jurídico que autoriza</u>, lo cual es totalmente distinto a suscribir un contrato de servicios profesionales con una de las partes del negocio jurídico que autorizó.

Tampoco quedó establecido que Pérez Rodríguez hubiese asesorado al Municipio en cuanto a ese contrato en específico para después actuar como notario en el negocio jurídico en violación al deber de imparcialidad del notario a tenor con la Regla 4 del Reglamento Notarial, ante, y la exposición de motivos de la Ley Notarial, ante.[3]

---

[3] Resulta pertinente aclarar que en su informe el Comisionado Especial no halló a Pérez Rodríguez incurso en violación al segundo cargo sobre el Reglamento y la Ley Notarial específicamente. Ello no obstante, las expresiones

(Continúa . . .)

En fin, no podemos sostener los cargos sobre el Canon 21, ante, y la Regla 4 del Reglamento Notarial, ante, a base de especulaciones o presunciones. En otras palabras, el mero hecho de que el Municipio de Caguas fuese cliente de Pérez Rodríguez al momento de éste autorizar el contrato de arrendamiento entre el Municipio y X-Plosión y que este último luego se convirtiera en su cliente no significa que haya incurrido automáticamente en conducta impropia. Llegar a dicha conclusión sin los fundamentos necesarios implicaría una conjetura de este Tribunal en cuanto a las acciones de Pérez Rodríguez lo cual no sólo es insostenible en derecho, sino que impondría una limitación sustancial en la práctica actual de la notaría.

Ello no obstante, en vista de las circunstancias y hechos particulares del presente caso, no podemos avalar por completo la actuación de Pérez Rodríguez. Sin bien es cierto que a tenor con la jurisprudencia aplicable, Pérez Rodríguez no infringió explícitamente el Canon 21, ante, ni la Regla 4 del Reglamento Notarial, ante, al otorgar la escritura de arrendamiento entre el Municipio y X-Plosión, indudablemente no fue lo más prudente. Como reseñáramos, al autorizar la referida escritura de arrendamiento, Pérez Rodríguez conocía que en apenas dos semanas comenzaría a laborar como asesor legal de X-Plosión.

---

emitidas en el mismo denotan que éste entendió que Pérez Rodríguez había sido imparcial al autorizar el contrato de arrendamiento entre el Municipio de Caguas y X-Plosión.

Reiteradamente hemos sostenido que la apariencia de conducta impropia tiene un efecto dañino sobre la imagen, confianza y respeto de la ciudadanía ante la profesión, igual que lo tiene la verdadera "impropiedad ética". In re Gordon Menéndez, ante; In re Sepúlveda Girón, ante. Ante el cuadro fáctico particular, lo más atinado era que, en vista de la relación abogado-cliente que en el futuro cercano comenzaría con X-Plosión, éste se apartase del negocio habido entre este último y el Municipio y así evitar cualquier sospecha de impropiedad sobre su rol como notario en dicho negocio jurídico. Es decir, éste debió ser más cuidadoso al tratar con el Municipio y X-Plosión y no debió autorizar una escritura entre ambas partes si ya había pactado fungir como asesor legal de la corporación. Ello hubiera sido lo más juicioso.

Por las razones anteriormente expuestas, opinamos que Pérez Rodríguez infringió el Canon 38 del Código de Ética. Habida cuenta de que es la primera vez que se presenta una queja contra Pérez Rodríguez en más de cuarenta años de ejercer la abogacía y la notaría, que el negocio jurídico autorizado por él no ha sido impugnado y las partes no han sufrido daño alguno, nos limitaremos a amonestar a éste por no esforzarse en evitar hasta la apariencia de conducta impropia en el ejercicio de sus funciones.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Libertario Pérez Rodríguez

CP-2004-3

SALA ESPECIAL INTEGRADA POR EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON Y LOS JUECES ASOCIADOS SEÑOR REBOLLO LÓPEZ Y SEÑORA FIOL MATTA

SENTENCIA

San Juan, Puerto Rico, a 7 de diciembre de 2007

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia amonestando al Lcdo. Libertario Pérez Rodríguez por no esforzarse en evitar la apariencia de conducta impropia en el ejercicio de sus funciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo